Henry *et al. v.* Thomas, Executor, *et al.*

No. 14,222.

HENRY ET AL. *v.* THOMAS, EXECUTOR, ET AL.

PRACTICE.—*Pleading.*—*Exhibit.*—*Part of Record.*—*Bill of Exceptions.*—Where a paper is properly a part of and is copied into the record as an exhibit filed with and as a part of a pleading, it need not be re-copied into the bill of exceptions, but it is sufficient to refer to it in the bill and state the fact that it was admitted in evidence and that a copy of it appears at a particular place in the record.

WILL.—*Construction of.*—Courts, in construing wills, will give due regard to the natural impulses and feelings of mankind, and take into consideration the general laws of descent and the rules for the disposition of estates, and beneficiaries will be held to take *per stirpes* unless the language used in the devise or bequest excludes such an intention.

SAME.—*When Devisees Take Per Stirpes.*—A testatrix provided by her will that her property should "be divided equally between my brothers and sisters, and the children of deceased brothers and sisters, and the brothers and sisters of Perry J. Brinegar (her deceased husband), and the children of deceased brothers and sisters."

*Held,* that the children of deceased brothers and sisters of the testatrix and of her deceased husband take *per stirpes,* and are not entitled to share *per capita* with the living brothers and sisters.

SAME.—*Phrase " to be Divided Equally."*—*Meaning of.*—The words "to be divided equally" apply as well to a division among classes as among individuals.

From the Marion Circuit Court.

*J. F. Carson, C. Thompson, R. Denny* and *J. R. McFee,* for appellants.

*L. H. Reynolds, H. C. Allen, C. L. Henry* and *H. C. Ryan,* for appellees.

OLDS, J.—Mary Ferrell died September 5th, 1884, testate, leaving surviving her Andrew Ferrell, her husband, and brothers and sisters and children of deceased brothers and sisters, and brothers and sisters and children of deceased brothers and sisters of her deceased husband. The testatrix was childless. By her will she gave her husband $2,000, and then provided as follows: " The balance of my estate I will

and bequeath as follows : To be divided equally between my brothers and my sisters and the children of deceased brothers and sisters, and the brothers and sisters of Perry J. Brinegar, deceased, and the children of deceased brothers and sisters, except the following, to wit : the heirs of Henry Brinegar, deceased, to whom I will the sum of one dollar, and to Serilda Rohbacke I will one dollar, and to Martha Barrett one dollar, and to Milton Henry one dollar, and this is all I give and bequeath to these out of my estate."

A controversy arose among the general legatees as to the portion they were each entitled to receive under the provisions of the will as hereinbefore quoted, some claiming that the remainder of the estate should be distributed so as to give to each of the children of a deceased brother and sister of herself, and to each of the children of deceased brothers and sisters of Perry J. Brinegar, a portion of her estate equal to the portion given to each of her surviving brothers and sisters and the surviving brothers and sisters of Perry J. Brinegar, deceased, Perry J. Brinegar being the deceased husband of said testatrix. In other words, some of the legatees claimed that the distribution should be *per capita*, and others claimed that distribution should be made *per stirpes*.

The executor filed his petition in the court below, showing such contention among the legatees, and requesting the court to construe the will and declare its true meaning and intent.

Upon the filing of said petition by the executor, the appellants filed their cross-petition, making the record of the will and probate thereof a part of the same, and asking the court to adjudge each of them entitled, under the provisions of the will, to one-twelfth ($\frac{1}{12}$) of that part of the estate in controversy, upon the theory that the will provides that distribution should be made *per stirpes* and not *per capita*.

Following this, appellee Sarah A. Henry, as guardian of six minor children of William H. Henry, a deceased brother of said testatrix, filed a cross-petition showing that there are twenty-five legatees entitled to share in the portion of the

estate in còntroversy, and claiming that each is entitled to an equal share thereof. Perry J. Rhue and others, appellees, filed a cross-petition, making a copy of the will an exhibit, and alleging that in order to distribute said estate it was necessary for the court to construe said will, and asking that the same be construed and the interest of the legatees determined. Thereupon the cause was submitted to the court. The will was offered in evidence, and the court found the names and number of the legatees, brothers and sisters of the testatrix and of her deceased husband, and children of deceased brothers and sisters of testatrix and her deceased husband, twenty-five in number, and that they were each entitled to a one twenty-fifth ($\frac{1}{25}$) part of said estate under the will, and made an order and rendered a judgment for the distribution of said estate accordingly.

The appellants filed a motion for a new trial, which was overruled, and exceptions reserved to the ruling by the appellants.

The first cause assigned for a new trial is, that " the decision of the court is not sustained by sufficient evidence." The second alleged that " the decision of the court was contrary to law."

We think these properly challenge the construction given to the will, as it fairly appears from the bill of exceptions that the will was all the evidence submitted to the court. The only contest was as to the construction to be given the language used in the devise of the remainder of the estate of the testatrix, and no other evidence was competent in the case, unless there was such ambiguity in the language used as to admit of parol evidence, and there was no such ambiguity in the will in controversy as to admit of parol evidence to aid in its interpretation.

It is contended by counsel for appellees that the will is not properly included in the bill of exceptions, and, therefore, can not be considered. The will is made an exhibit to the cross-petition of Perry J. Rhue and others, and as such is

properly copied into the record on page 17 of the transcript. The bill of exceptions states that the will was in evidence, and is copied on page 17 of the record.

When a paper is properly a part of the record as an exhibit which is made a part of a pleading, and once copied into the record, it is useless to re-copy it into the bill of exceptions, and it is sufficient to refer to it in the bill of exceptions, and state the fact that it was admitted in evidence, and that a copy of it appears at a particular place in the record. To hold otherwise would be to require a needless encumbrance of the record. We do not say that this is a model bill of exceptions, but in this case copies of the will were set out and made a part of the petitions and cross-petitions filed by the various legatees. There were no facts in dispute; all that was asked of the court was to construe certain language in the will, the terms of which were not disputed. And the court was asked to decide what share each legatee took by virtue of the will, and to make an order for the distribution of the estate in accordance with the construction given. No answers were filed to the petition or cross-petitions, no denial of any of the allegations in either of them; so that the facts as alleged in the petitions were admitted, and the court was called upon to make a finding and render judgment on the facts as admitted by the pleadings. There was no necessity for any evidence, and the bill of exceptions states that " immediately upon the filing of the petition and cross-petitions the court announced its readiness to hear the same, whereupon the attorneys for petitioners and cross-petitioners commenced to argue to the court the question as to what construction should be given to the will."

While the record shows the proceedings to be somewhat informal, yet we think in this particular case it properly presents the question to this court.

The question presented is one upon which the authorities are not harmonious.

It has been the almost universal rule of law-making bodies,

in providing to whom the estate of an intestate shall descend, to provide that the estate shall go to the nearest relatives, and in case of the death of one who would have inherited if living, but who has died, leaving issue surviving, that the surviving issue take the share the parent would have inherited if living; that, when children inherit from the parent, and one dies prior to the death of the parent, leaving children surviving, the child or children of such deceased child take the share the deceased child would have inherited if he or she were living; and this rule has almost universally been adopted when the estate descends to the brothers and sisters of an intestate. Such laws of descent have met with universal approval. Where one estate is disposed of otherwise by will, many pass in the manner prescribed by the law of descent. It is the natural impulse of mankind to have a greater affection for, and be more willing to aid, those who are bound to them by the near ties of relation or kinship than those further distant, and the ties which bind kindred together are strong or weak, owing to the degree of kinship. True, there are exceptions to this rule ; social or business relations may be such as to bind one more closely to distant than to near relatives, but such are exceptions. Courts, in construing both wills and statutes of descent, will give due regard to the natural impulse and feelings of mankind, and take into consideration the general laws of descent and the rules for the disposition of estates.

The will in this case, it may be said, divides the legatees into two classes—the testatrix's brothers and sisters and the brothers and sisters of Perry J. Brinegar, and the children of her deceased brothers and sisters and the children of the deceased brothers and sisters of Perry J. Brinegar. Perry J. Brinegar, as it appears by the proceedings, and is admitted, was the deceased husband of the testatrix. She first provides for her husband by giving him two thousand dollars, then she provides for her own brothers and sisters and the brothers

and sisters of her deceased husband, and the children of those who are dead.

As admitted by the pleadings and found by the court below, there are twenty-five in all who take as legatees. The testatrix has no children ; she is disposing of her own estate, and in the disposition of it she seeks to treat her own kindred and the kindred of her first husband alike. It is the natural presumption, unless it appears to the contrary, that she would make them the objects of her bounty in proportion to the degree of kinship existing between her and them, treating, as it clearly appears, the brothers-in-law and sisters-in-law the same as the brothers and sisters of her own blood.

We think the proper construction to be given to this will, and the manifest intention of the testatrix, was to give to the children of each deceased brother and sister of herself and deceased husband the same share that their parent would have taken if living—the child or children of one deceased brother or sister to take the same share that one living brother or sister should take. In legal phraseology, they take *per stirpes* and not *per capita.* We are supported by the weight of authority in this construction.

The case of *Wood* v. *Robertson,* 113 Ind. 323, was a devise almost identical with this. In that case the will made a devise as follows : " I give and devise to my beloved wife the farm on which I now reside, as well as all my other real estate of which I may die legally possessed ; also, all the personal property of whatever description of which I may die the owner, to have and to hold during her natural life ; and at her death it is my will that whatever remains of my estate, whether real or personal property, in the hands of my wife, shall be equally divided among my children then living and the descendants of such as may be dead, share and share alike, taking into consideration all advancements which may have been made either by myself or my wife." The court, in construing the will in that case, says : " We deem it clear that the intention of the testator was to give his chil-

dren and their descendants or heirs the same estate as the law would give them, that is, that the children living should share alike, and the children or descendants of the dead should take the share that would have fallen to the father or ancestor had he been living. To put our conclusion in more technical terms, we decide that the beneficiaries of the tes-. tator's bounty take *per stirpes* and not *per capita.*" The case of *Houghton* v. *Kendall*, 7 Allen, 72, and authorities there cited, support this construction.

In the case of *Raymond* v. *Hillhouse*, 45 Conn. 467, the eighth clause of the will is as follows: "All the residue of my estate, real and personal, I give and devise to the following named persons, to be divided equally among them:. My sisters Rachel and Sarah, the grandchildren of my brother William, and the grandchildren of my deceased sisters Delia and Mary; meaning by this to include all said grandchildren living at the time of my decease; provided that the share of Elizabeth Raymond, daughter of my deceased nephew James H. Raymond, shall be held by John Beach, of Goshen, in trust for her benefit as hereinafter provided." There were living at the testator's decease two grandchildren of the testator's brother William, three of his sister Delia, and fourteen of his sister Mary; and the question submitted to the court was, whether these grandchildren took under the will *per stirpes*, or all the legatees took *per capita*, and the court held they took *per stirpes*.

In the will in this case there are designated two classes of beneficiaries, viz., the brothers and sisters of the testatrix and her deceased husband, Perry J. Brinegar, living at her decease, and the children of such brothers and sisters as are dead. It is fair to presume that in providing for the brothers and sisters that might be living, she intended to provide for and give to them a certain portion of her estate. The children of deceased brothers and sisters relate to the children of the brothers and sisters who die before the death of the testatrix, hence at the time of the execution of the will it

could not be known to her how many brothers and sisters there would be living at the time of her decease, nor how many children of deceased brothers and sisters would survive her ; they may have been so numerous as to have reduced the share of a surviving brother and sister very materially from the amount they would receive had there been no births or deaths between the execution of the will and the death of the testatrix, if the will be construed so as to distribute the estate *per capita.*

The words " to be divided equally " apply as well to a division among classes as among individuals. *Raymond* v. *Hillhouse, supra.*

The rule as stated in Jarman on Wills is, that, when a devise or bequest is made to " my son A., and the children of my son B.," in which case A. takes only a share equal to that of one of the children of B., they take *per capita.* It may be said that it is stated by the same author that this " mode of construction will yield to a very faint glimpse of a different intention in the context." 2 Jarman Wills, pp. 756 and 757.

Of this rule the court, in the case of *Raymond* v. *Hillhouse, supra,* says : " If the above rule is so easily set aside, it would seem equally reasonable that it should also yield to the presumption in favor of the natural heirs or next of kin, for a distribution according to the statute, in all cases where the language of the will is consistent with such a distribution, and the real intention of the testator is in doubt."

This rule has been so far abrogated by the courts of the different States that it no longer has any practical force in the construction of wills, and the weight of authority is to the effect that the beneficiaries take *per stirpes,* unless the language used in the devise or bequest is such as to exclude that intention. *Minter's Appeal,* 40 Pa. St. 111 ; *Fissel's Appeal,* 27 Pa. St. 55 ; *Clark* v. *Lynch,* 46 Barb. 68 ; *Vincent* v. *Newhouse,* 83 N. Y. 505 ; *Bool* v. *Mix,* 17 Wend. 119 ; *Alder* v. *Beale,* 11 Gill & J. 123.

The court erred in the construction given to the will, and the finding and decision of the court was erroneous.

The judgment is reversed, at costs of appellees, with instructions to sustain the motion for a new trial, and for further proceedings not inconsistent with this opinion.

Filed March 12, 1889.